UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WARREN FREDRICKSON,<br><br>    Plaintiff,<br><br>    v.<br><br>U. BANIGA, et al.,<br><br>    Defendants. | Case No. 1:20-cv-00398-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT THIS ACTION BE DISMISSED FOR FAILURE TO STATE A CLAIM<br><br>(ECF No. 11)<br><br>OBJECTIONS, IF ANY, DUE WITHIN TWENTY-ONE (21) DAYS<br><br>ORDER DIRECTING CLERK TO ASSIGN DISTRICT JUDGE |

Warren Frederickson ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action filed pursuant to 42 U.S.C. § 1983.  Plaintiff filed the complaint commencing this action on March 18, 2020.  (ECF No. 1).

On May 21, 2020, the Court screened Plaintiff's complaint and found that it failed to state any cognizable claims.  (ECF No. 8).  The Court gave Plaintiff thirty days to either: "a. File a First Amended Complaint, which the Court will screen in due course; or b. Notify the Court in writing that he wants to stand on his complaint, in which case the Court will issue findings and recommendations to a district judge consistent with this order."  (Id. at 6).  The Court also provided Plaintiff with applicable legal standards.  (Id. at 3-5).

After being granted an extension of time (ECF No. 10), Plaintiff filed his First

Amended Complaint (ECF No. 11).  Plaintiff's First Amended Complaint is now before this Court for screening.  For the reasons that follow, the Court will recommend that this action be dismissed because Plaintiff has failed to state a claim upon which relief may be granted.

Plaintiff has twenty-one days from the date of service of these findings and recommendations to file his objections.

## I. SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1), (2).  As Plaintiff is proceeding *in forma pauperis* (ECF No. 5), the Court may also screen the complaint under 28 U.S.C. § 1915.  "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted."  28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  A plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570).  The mere possibility of misconduct falls short of meeting this plausibility standard. Id. at 679.  While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (citation and internal quotation marks omitted).  Additionally, a plaintiff's legal conclusions are not accepted as true. Iqbal, 556 U.S. at 678.

Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal

pleadings drafted by lawyers." Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after Iqbal).

## II. SUMMARY OF PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff alleged the following in his First Amended Complaint:

Defendants Baniga and Mansdorfer failed and/or refused to provide Plaintiff with the necessary Durable Medical Equipment (DME), causing severe pain.

Plaintiff was forced to amble around for almost two months on a fractured left foot. Plaintiff's daily activities were affected and he had severe pain during this time.

Plaintiff was rebuked by the medical staff at California Correctional Institution every time he attempted to get relief or help, that is, crutches or a CAM boot. The only thing that both defendants offered was a soft type cast shoe that goes on the bottom of a cast, even though there was no cast on Plaintiff's foot. Both defendants failed to act once it was brought to their attention.

Initially, Plaintiff thought he had bruised his foot. However, the bruising and swelling had not lessened, and Plaintiff had extreme pain. It was then that he submitted a medical request form. On the day that the post-op shoe was ordered, it took at least four people to figure out how to order it. The doctor called the nurse in to help with the ordering, but could not locate it in the system. Two more nurses were asked, and finally the post-op shoe was ordered (Plaintiff was told that they ordered a CAM boot). Plaintiff did not know the difference, so when the post-op shoe arrived and was given to Plaintiff, Plaintiff accepted it, trusting that the staff ordered the correct appliance. Plaintiff was told that it was a CAM boot, and Plaintiff took the nurse at her word.

At another follow-up visit, Plaintiff told the doctor that he had been given a CAM boot, to which the doctor replied, "That's not a 'CAM BOOT'-it's a 'Post-op' shoe." The doctor told Plaintiff that he would order the correct CAM boot. After a period of time passed, Plaintiff inquired about the CAM boot. The nurse told Plaintiff, "these things take time, you know the red tape involved how slow things are around here." So, Plaintiff waited again, with no communication from staff regarding the status of the CAM boot. Plaintiff sent yet another

medical request form to medical. The doctor in medical made an in-person appointment for Plaintiff to see his podiatrist in Bakersfield. The doctor said Plaintiff did not need to be seen in person to have the CAM boot ordered, and did not understand why the correct appliance had not been ordered in the first place. The podiatrist stated that the CAM boot was required so Plaintiff's foot would heal properly. Per the doctor's original instructions, Plaintiff required crutches and a CAM boot because of a fractured metatarsal bone in his left foot, which occurred when Plaintiff stepped off the flight of stairs located at Dorm. Plaintiff came down on the side of his left foot, which folded over. He immediately felt pain and crumbled to the ground.

The defendants, in their own words, stated that they were aware of Plaintiff's medical condition, and that it was a serious medical need.[1]

All the nurses Plaintiff talked to told Plaintiff that they were going to give Plaintiff a CAM boot.

The medical staff was fully aware of the seriousness of Plaintiff's injury, which is stated on his initial medical request form. Additionally, medical staff knew because X-rays taken, medical appliances were issued (crutches, a post-op shoe, a vest), follow-up ducats were issued, follow-up X-rays were taken, and Plaintiff had a Video Conference with his Podiatrist.

Plaintiff brings an Eighth Amendment claim against defendants Baniga and Mansdorfer for deliberate indifference to his serious medical needs.

## III.   ANALYSIS OF PLAINTIFF'S CLAIM

### A. Section 1983

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

---

[1] Plaintiff alleged he attached records supporting this assertion, but no records are attached.

42 U.S.C. § 1983.  "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'"  Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)); see also Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 618 (1979); Hall v. City of Los Angeles, 697 F.3d 1059, 1068 (9th Cir. 2012); Crowley v. Nevada, 678 F.3d 730, 734 (9th Cir. 2012); Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law, and (2) the defendant deprived him of rights secured by the Constitution or federal law.  Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); see also Marsh v. Cnty. of San Diego, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law").  A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'"  Preschooler II v. Clark Cnty. Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)).  "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms."  Preschooler II, 479 F.3d at 1183 (quoting Johnson, 588 F.2d at 743).  This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause."  Arnold v. Int'l Bus. Mach. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981); see also Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008).

A plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights.  Iqbal, 556 U.S. at 676-77.  In other words, there must be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff.  See Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 691, 695 (1978).

\\\

\\\

**B. Deliberate Indifference to Serious Medical Needs in Violation of the Eighth Amendment**

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). This requires a plaintiff to show (1) "a 'serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) that "the defendant's response to the need was deliberately indifferent." Id. (quoting McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992) (citation and internal quotations marks omitted), overruled on other grounds by WMX Technologies v. Miller, 104 F.3d 1133 (9th Cir. 1997) (*en banc*)).

Deliberate indifference is established only where the defendant *subjectively* "knows of and disregards an *excessive risk* to inmate health and safety." Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) (emphasis added) (citation and internal quotation marks omitted). Deliberate indifference can be established "by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Jett, 439 F.3d at 1096 (citation omitted). Civil recklessness (failure "to act in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known") is insufficient to establish an Eighth Amendment violation. Farmer v. Brennan, 511 U.S. 825, 836-37 & n.5 (1994) (citations omitted).

A difference of opinion between an inmate and prison medical personnel—or between medical professionals—regarding appropriate medical diagnosis and treatment is not enough to establish a deliberate indifference claim. Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004). Additionally, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106. To establish a difference of opinion rising to the level of deliberate indifference, a

"plaintiff must show that the course of treatment the doctors chose was medically unacceptable under the circumstances." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

Plaintiff has failed to state a claim against either defendant. As mentioned above, Plaintiff must allege that each defendant personally participated in the deprivation of his rights. However, while Plaintiff includes conclusory allegations regarding Defendants' conduct, Plaintiff includes almost no factual allegations regarding what either defendant did or did not do that violated his rights. Plaintiff does make allegations regarding the conduct of various nurses and doctors, but Plaintiff does not provide their names, so it is not clear which, if any, are the defendants in this action. As Plaintiff has failed to sufficiently allege that Defendants personally participated in the deprivation of his rights, Plaintiff has failed to state a claim against Defendants.

Moreover, Plaintiff's factual allegations do not appear to state a claim for deliberate indifference to his serious medical needs against any of the medical professionals discussed in the complaint. Plaintiff has sufficiently alleged that he had a serious medical need, and that certain nurses and doctors were aware of this need. However, Plaintiff has not sufficiently alleged that any of the nurses or doctors were deliberately indifferent to his serious medical need. Instead, it appears that Plaintiff received medical attention for his injury. Plaintiff has alleged that he was seen by medical professionals (including a podiatrist), that X-rays were taken, that he was issued a post-op shoe, and that he was eventually issued crutches and a vest.

While Plaintiff has sufficiently alleged that there was an issue with the ordering of his CAM boot, Plaintiff has at most alleged negligence. Plaintiff appears to allege that a doctor attempted to order a CAM boot, but because he did not know how to use the ordering system, he accidently ordered a post-op shoe. Once a doctor realized that Plaintiff was given the wrong item, the doctor stated that he would order the right item. While Plaintiff did not immediately receive the CAM boot, there is no indication that the delay was intentional or unreasonable.[2]

---

[2] Plaintiff alleged that he had to follow-up twice and was eventually given an in-person appointment to see his podiatrist. However, Plaintiff does not allege how much time passed. It is also not clear what occurred after Plaintiff saw the podiatrist.

While these allegations might state claim for negligence, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106.

Accordingly, Plaintiff has failed to state an Eighth Amendment claim against defendant Baniga or Mansdorfer for deliberate indifference to his serious medical needs.

## IV.     RECOMMENDATIONS AND ORDER

The Court has screened Plaintiff's First Amended Complaint and finds that it fails to state any cognizable claims.  The Court does not recommend granting further leave to amend.  The facts alleged by Plaintiff suggest at most that certain medical professionals were negligent, which is not an Eighth Amendment violation.  As the Court provided Plaintiff with an opportunity to amend his complaint with the benefit of the relevant legal standards, and as Plaintiff filed his First Amended Complaint with the guidance of those legal standards, it appears that further leave to amend would be futile.

Accordingly, based on the foregoing, it is HEREBY RECOMMENDED that:

1. This action be dismissed for failure to state a claim; and
2. The Clerk of Court be directed to close the case.

These findings and recommendations will be submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1).  Within twenty-one (21) days after being served with these findings and recommendations, Plaintiff may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

\\\
\\\
\\\

Additionally, IT IS ORDERED that the Clerk of Court is directed to assign a district judge to this case.

IT IS SO ORDERED.

Dated: __August 31, 2020__  /s/ Erica P. Grosjean
UNITED STATES MAGISTRATE JUDGE